UNITED STATES of America,
Plaintiff—Appellee,

v.

Arthur ANDRES, Defendant—
Appellant.

United States of America,
Plaintiff—Appellee,

v.

Eduardo C. Mina, Defendant—
Appellant.

Nos. 05–10431, 05–10435.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 3, 2006.*

Decided May 8, 2006.

---

* The panel previously granted Andres' unopposed motion to submit his case, *United States* *v. Andres*, No. 05–10431, without oral argument. *See* Fed. R.App. P. 34(a)(1), (2).

Michael Purpura, Esq., Office of the U.S. Attorney, Honolulu, HI, for Plaintiff-Appellee.

Lynn T. Hamilton, Esq., Hamilton Law Office, PC, Mesa, AZ, for Defendant-Appellant.

Before: B. FLETCHER, BEEZER and FISHER, Circuit Judges.

### MEMORANDUM**

Appellant–Defendant Andres appeals his sentence of 41 months following a guilty plea to charges of racketeering in violation of the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c), conspiring to commit a racketeering offense in violation of 18 U.S.C. § 1962(d) and federal extortion in violation of 18 U.S.C. § 1951. Appellant Mina, a co-defendant charged with the same violations, was convicted of the charges by a jury and sentenced to 65 months imprisonment. Mina challenges his conviction on a number of grounds and appeals his sentence. We affirm Mina's conviction and both Andres' and Mina's sentences.[1]

## I.  Mina's Conviction

Mina argues that the district court (1) erred in denying his motion to suppress statements he made to law enforcement agents without first being given his *Miranda* warnings; (2) erred in denying his motion in limine to exclude evidence of his travel to the Philippines; and (3) improperly instructed the jury on the crime of federal extortion. Mina also contends (4) that the prosecutor improperly vouched for witnesses' credibility; and (5) that there was insufficient evidence to convict him of racketeering and conspiracy to commit racketeering. We address each argument in turn.

### A.  Motion to Suppress

■ An officer's obligation to give a suspect *Miranda* warnings before interrogation extends only to those instances where the individual is "in custody." *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). We review de novo whether a person is "in custody" for purposes of *Miranda*. *United States v. Kim*, 292 F.3d 969, 973 (9th Cir.2002).

Given the length and location of the interview, together with the fact that the agents confronted Mina with incriminating evidence, we hold that the district court erred in finding that Mina was not in custody. Although Mina voluntarily accompanied the agents to the police station and the agents informed him at the outset of the questioning that he was not under arrest and was free to leave, the interview eventually turned custodial. *See id.* at 975. As the questioning progressed, a reasonable person in Mina's circumstances would have felt compelled to stay in the interview room and answer the agents' questions. *See United States v. Beraun–Panez*, 812 F.2d 578, 580 (9th Cir.), *modified by* 830 F.2d 127 (9th Cir.1987); *see also Kim*, 292 F.3d at 973. We therefore reverse the district court's denial of the motion to suppress Mina's statements, because Mina was not apprised of his *Miranda* rights.

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1.  Because the parties are familiar with the facts of this case, we recite them only as necessary to our decision.

■ However, Mina's admission was merely consistent with the rest of the government's overwhelming evidence of his guilt that it adduced at trial. It is clear "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Garibay,* 143 F.3d 534, 539 (9th Cir.1998). The erroneous admission of Mina's statements was therefore harmless. *See id.*

**B. Motion in Limine**

■ Mina argues that the district court erred in admitting evidence of his travel to the Philippines, a decision we review for abuse of discretion. *See United States v. Felix–Gutierrez,* 940 F.2d 1200, 1207–08 (9th Cir.1991). Here, the facts support the inference that Mina's flight indicates a "consciousness of guilt concerning the crime charged" and of "actual guilt" itself. *See id.* at 1207. Mina knew that he was a suspect in an ongoing investigation and that the agents had at least one incriminating tape recording of him discussing illegal activities. He never returned to work after his interrogation at the police station, and roughly six weeks later he informed his supervisor that he was in the Philippines, where he stayed until he was arrested eight months later. Because the evidence of flight was not more prejudicial than probative, the district court did not abuse its discretion in allowing the introduction of that evidence. *Id.*

**C. Jury Instruction 23**

■ Mina argues that jury instruction 23 was "misleading" and "inadequate," because the last sentence permitted a conviction based on his acceptance of money which he knew was intended to influence "some action" rather than an "official action." Because Mina did not object to the revised jury instruction at trial, we review for plain error whether the instructions as

a whole are misleading or inadequate to guide the jury's deliberation. *See United States v. Tirouda,* 394 F.3d 683, 688 (9th Cir.2005); *United States v. Dixon,* 201 F.3d 1223, 1230 (9th Cir.2000).

Although we agree that it would have been preferable to use the phrase "official action" rather than "some action" in the instruction's final sentence, we hold that the district court's instruction did not amount to plain error. *See United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The instruction clearly sets forth the four elements of federal extortion; the first and third elements required proof that Mina was "acting under color of *official* right" and that he "knew the money was given in return for influencing some *official* action." The last paragraph cannot reasonably be read to eliminate the need for such "official" action as an element of the offense. Because the district court's omission of the word "official" from the final sentence of the instruction was not a "clear and obvious" error, *United States v. Sanders,* 421 F.3d 1044, 1050 (9th Cir.2005), did not prejudice in some substantial manner Mina's right to a fair trial, *Tirouda,* 394 F.3d at 688, and did not "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings," *Olano,* 507 U.S. at 732, 113 S.Ct. 1770, we hold that the court did not commit plain error in giving the instruction.

**D. Improper vouching for witnesses' credibility**

■ For the first time on appeal, Mina argues that the prosecutor vouched for the credibility of two government witnesses when the prosecutor asked the witnesses whether their plea agreements required them to testify "in any particular way." Both witnesses answered that they were to "tell the truth." Because Mina did not object at trial, we also review these im-

proper vouching claims for plain error. *United States v. Daas*, 198 F.3d 1167, 1178 (9th Cir.1999).

Mina's argument is foreclosed by *United States v. Monroe*, 943 F.2d 1007, 1013 (9th Cir.1991), which held that "a reference to the 'truthful testimony' provisions of a witness's agreement with the government does not constitute vouching if it is made in response to an attack on the witness's credibility because of his plea bargain." Here, the prosecutor's single question on redirect came only after defense counsel had challenged each witness' credibility based on his plea agreement. Moreover, it is not plain error for a prosecutor to elicit on direct examination a witness' obligation to tell the truth under a plea agreement. *United States v. Ortiz*, 362 F.3d 1274 (9th Cir.2004). Thus, no vouching occurred here.

### E. Sufficiency of the Evidence

■ Finally, Mina argues that the district court erred in denying his Rule 29 motion for judgment of acquittal. He contends that there was insufficient evidence to convict him of racketeering and conspiracy to commit racketeering, because the government failed to prove that he was part of a conspiracy. We review de novo the denial of a Rule 29 motion and affirm the district court's decision. *United States v. Lombera–Valdovinos*, 429 F.3d 927, 928 (9th Cir.2005).

Viewing the evidence in the light most favorable to the government, it is clear that "any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." *Id.* (internal quotation marks omitted). First, the evidence adduced at trial showed that Mina engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See United States v. Fernandez*, 388 F.3d 1199, 1221 (9th Cir.

2004). In addition, the evidence was sufficient to demonstrate an effect on interstate commerce, because the criminal conduct depleted the assets of businesses that engage in such commerce. *United States v. Shryock*, 342 F.3d 948, 985 (9th Cir. 2003).

The evidence also was sufficient to support Mina's conviction for conspiring to commit a racketeering offense. Significantly, Mina does not deny the existence of a conspiracy, but rather argues that he was not a part of it. However, the government's tape recordings and the testimony of the cooperating co-defendants demonstrate that Mina knew of the conspiracy, joined in it and acted to further its objective. *See United States v. Alvarez*, 358 F.3d 1194, 1201 (9th Cir.2004); *United States v. Yossunthorn*, 167 F.3d 1267, 1270 (9th Cir.1999).

Because the evidence was sufficient to allow the jury reasonably to arrive at its verdict, the district court did not err in denying Mina's Rule 29 motion. *United States v. Mares*, 940 F.2d 455, 458 (9th Cir.1991).

## II. Andres' & Mina's Sentencing Claims

Andres requests an *Ameline* remand for resentencing, arguing that the district court erroneously believed that it had to apply the 2001 Sentencing Guidelines Manual and erroneously used a preponderance of the evidence standard of proof in calculating his advisory Guidelines range. Similarly, Mina argues that the district court used the wrong edition of the Guidelines and erred in calculating his Guidelines range.

We review the district court's interpretation of the Sentencing Guidelines de novo, the application of the Sentencing Guidelines to the facts of this case for abuse of discretion and the court's factual findings for clear error. *United States v.*

*Kimbrew,* 406 F.3d 1149, 1151 (9th Cir. 2005). We review the sentence ultimately imposed for reasonableness. *United States v. Booker,* 543 U.S. 220, 261–62, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

■■■ The district court did not err in using the 2001 Guidelines Manual to sentence Andres and Mina. The sentencing took place after *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and the district court clearly indicated that it knew the Guidelines were "advisory." Because the district court determined that use of the Guidelines in effect at the time of sentencing might implicate the ex post facto clause, it properly followed U.S.S.G. § 1B1.11(b)(1) and applied the version in effect "on the last day of the offense of conviction." Here, Andres pled guilty to and Mina was convicted of participating in a conspiracy that did not terminate until December 2001—*after* the effective date of the 2001 edition (11/1/2001)—so use of that version was proper.[2] Moreover, any error in using the 2001 edition was harmless, given the benefit to both Andres and Mina of a two-level reduction under that version as compared to the version in effect at the time of sentencing.

We also reject Andres' argument that *Booker* rendered discretionary the particular Guidelines Manual to be utilized. *Booker* did not purport to give sentencing courts discretion to ignore individual Guidelines provisions, such as § 1B1.11. Rather, *Booker* made clear that despite their now-advisory nature, sentencing courts must continue to "consult [the] Guidelines and take them into account

when sentencing." *Booker,* 543 U.S. at 264, 125 S.Ct. 738. Here, the district court properly determined that the 2001 edition of the Guidelines would apply.

■■■ Andres' argument that the district court should have applied sentencing enhancements based on facts supported by clear and convincing evidence also lacks merit. In *United States v. Kilby,* 443 F.3d 1135, 1140 (9th Cir.2006), we recently confirmed that "district courts should resolve factual disputes at sentencing by applying the preponderance of the evidence standard." We therefore reject Andres' request for a remand for resentencing.

■■■ We further hold that the district court did not clearly err in finding that the total amount in illegal payments received by the conspiring defendants was in excess of $200,000. The Guidelines state that the district court "need only make a reasonable estimate of the loss," and "the court's loss determination is entitled to appropriate deference." U.S.S.G. § 2B1.1., cmt. 3(C). Here, the district court adopted the PSR's extrapolation methodology and found that the defendants received $224,880 in payments from January 1999 to December 2001. Although Mina disputes that he joined the conspiracy in January 1999, the district court agreed with the government that the PSR's formulaic approach was conservative. Thus, the district court found beyond a reasonable doubt that the total amount received by the conspiring defendants "clearly exceeded $200,000" and was "probably almost double" that amount. In light of the evidence of Mina's and Andres' participation

---

2. At sentencing, Andres suggested that use of the 2001 Guidelines violated the ex post facto clause of the Constitution because most of his illegal activity occurred before the effective date of those Guidelines (November 1, 2001). Andres does not, however, raise this argument on appeal. To the extent Mina raises the argument, it is foreclosed by *United States*

*v. Inafuku,* 938 F.2d 972, 974 (9th Cir.1991), which held that "[w]hen there is a change in the level of punishment that becomes effective during the course of an ongoing conspiracy, it is not a violation of the ex post facto clause of the Constitution to apply the law as it exists at the end of the conspiracy in fashioning a punishment for convicted conspirators."

in the conspiracy, this finding was not clearly erroneous, and any error with respect to when Mina joined the conspiracy was harmless.

 Finally, *United States v. Dupas,* 419 F.3d 916 (9th Cir.2005), forecloses Mina's contention that the district court's retroactive application of the advisory Guidelines violated his due process rights. We further conclude that both Andres' and Mina's sentences were reasonable within the meaning of *Booker.*

## III. Conclusion

Although the district court erred in denying Mina's motion to suppress, the error was harmless given the overwhelming evidence of his guilt. Because the remainder of Mina's challenges to his conviction lack merit, we **AFFIRM** the conviction. We also **AFFIRM** Andres' and Mina's sentences.